IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **LOWER48 IP LLC,**<br><br>  Plaintiff,<br><br>  v.<br><br>**SHOPIFY INC.,**<br><br>  Defendant. | Civil Action No. 6:22-cv-00997-DAE |

**<u>DEFENDANT SHOPIFY INC.'S MOTION TO COMPEL DISCLOSURE OF THIRD-
PARTY INTERESTS IN THIS LITIGATION</u>**

## TABLE OF CONTENTS

                                       Page

I. INTRODUCTION .................................................................................................................1
II. BACKGROUND ...................................................................................................................2
III. LEGAL STANDARD............................................................................................................3
IV. ARGUMENT.........................................................................................................................5
   A. This Court Has The Authority To Order Disclosure Of Information Concerning Third-Party Interests ........................................................................5
   B. Disclosure Of Third-Party Interests Is Necessary To Identify Conflicts of Interest and Avoid the Appearance of Impropriety .............................................7
V. CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Burden v. BTI Emp. Screening Servs., Inc.*, 248 F.3d 1138 (5th Cir. 2001) ................................... 5

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022) ............................ 10

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................................. 5

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003) ........................... 8

*Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913 (2004) ......................................................... 4, 9

*Cowley v. Pulsifer*, 137 Mass. 392 (1884) (Holmes, J.) ................................................................. 9

*Dietz v. Bouldin*, 579 U.S. 40 (2016) .............................................................................................. 5

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 947 (1988) ..................................... 8, 10

*Morrow v. McFarling*, 2017 WL 6452826 (E.D. Tex. Dec. 18, 2017) ..................................... 4, 9

*Nimitz Techs. LLC v. CNET Media, In*c., 2022 WL 17338396 (D. Del. Nov. 30, 2022) ..................................................................................................................... *passim*

*Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343 (5th Cir. 2000) ........................... 4, 9

*SCA Servs., Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977) ............................................................ 8

*United States v. Bremers*, 195 F.3d 221 (5th Cir. 1999) ............................................................ 4, 9

*United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32 (1812) ............................................ 5

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1098 (2017) ................................................................................................................... 4, 9

**Statutes**

28 U.S.C. § 455 ...................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 7.1 ........................................................................................................................... 4

Fed. R. Civ. P. 7.1 Advisory Committee's Notes to 2002 Amendment .......................................... 4

Fed. R. Civ. P. 83(b) ....................................................................................................................... 7

Standing Order, Contents of Joint Case Mgmt. Statement (N.D. Cal. Jan. 17, 2023) ................................................................................................................ 2, 6, 7

Standing Order Regarding Third-Party Litig. Funding Agreements (D. Del. Apr. 18, 2022) (Connolly, J.) ............................................................................... 2, 7

3d Cir. R. 26.1.1(b) ................................................................................................... 6

4th Cir. R. 26.1(a)(2)(B)-(C) .................................................................................... 6

5th Cir. R. 28.2.1 ...................................................................................................... 6

6th Cir. R. 26.1(b)(1)-(2) .......................................................................................... 6

10th Cir. R. 46.1(D)(1)-(2) ....................................................................................... 6

11th Cir. R. 26.1-1(a)(1) .......................................................................................... 6

C.D. Cal. L.R. 7.1-1 ................................................................................................. 6

N.D. Cal. L.R. 3-15 .................................................................................................. 6

N.D. Ga. L.R. 3.3 ..................................................................................................... 6

S.D. Ga. L.R. 7.1 ...................................................................................................... 6

N.D. & S.D. Iowa Civ. R. 7.1 .................................................................................. 6

D. Md. L.R. 103.3(b) ............................................................................................... 6

E.D. Mich. L.R. 83.4 ................................................................................................ 6

D. Nev. L.R. 7.1-1 ................................................................................................... 6

D. N.J. L.R. 7.1.1(a)(1)-(3) ................................................................................... 2, 7

E.D.N.C. Civ. R. 7.3 ................................................................................................ 6

N.D. Ohio L.R. 3.13(b) ............................................................................................ 6

S.D. Ohio Civ. R. 7.1.1 ............................................................................................ 6

N.D. Tex. L.R. 3.1(c) ............................................................................................... 6

N.D. Tex. L.R. 3.2(e) ............................................................................................... 6

I.     **INTRODUCTION**

Defendant Shopify Inc. ("Shopify") respectfully requests that the Court compel plaintiff Lower48 IP LLC ("Lower48") to disclose relevant information regarding third-party interests in this action which is essential to the Court's evaluation of any conflicts of interest. *See* 28 U.S.C. § 455(a) (requiring federal judges to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned"); § 455(b) (requiring federal judges to disqualify themselves where they have any "interest that could be substantially affected by the outcome of the proceeding"). Specifically, Shopify requests that Lower48 be ordered to identify all third-party interests in this action, including the identity of any individuals or entities that have financial interests in the outcome of this litigation, such as investors or litigation funders, and the scope of those interests. The identification of any such third-party interests is essential for determining whether there is a conflict of interest between any party and the Court. *Nimitz Techs. LLC v. CNET Media, In*c., 2022 WL 17338396, at *2 (D. Del. Nov. 30, 2022) (imposing additional disclosure requirements regarding third-party funders due to "critical[] importan[ce]" of ensuring that "federal judges do not suffer from conflicts that could call into question their impartiality").

Based on publicly available information, Lower48 believes that IP Edge, the US Innovation Fund ("USIF"), and possibly others may have an interest in this litigation. However, the full scope of who is involved and the extent of each entity's involvement is not clear. Moreover, the Court cannot know whether those entities (or other interested entities) are pass-throughs for other third-parties who have a financial stake in this litigation. Unless the Court requires disclosure of third-party interests, neither the Court nor Shopify will know who the beneficiaries of this litigation are.[1]

---

[1] Lower48 is required to provide a written settlement offer to Shopify on September 15, 2023 and Shopify will respond October 6, 2023. D.I. 23 at 1. Currently, Shopify does not know if Lower48 is authorized to sign a settlement without consent from unspecified third-parties. Nor, without funding disclosure, can Shopify know with whom it is negotiating.

*See id.* at *1 (expressing concern about "whether the real parties in interest are before the Court"), *3 (explaining that requiring disclosure of this information "promotes the identification of the real parties in interest in a case" and that "[i]dentifying the parties to the proceeding is an important dimension of publicness.  The people have a right to know who is using their courts.").

Several courts have required the disclosure of such information as necessary to identify conflicts of interest and avoid the appearance of impropriety.  *See*, *e.g.*, Standing Order Regarding Third-Party Litig. Funding Agreements (D. Del. Apr. 18, 2022) (Connolly, J.) (ordering statements regarding "Third-Party Funders" and additional related discovery within 30 days of the filing of an initial pleading); D. N.J. L.R. 7.1.1(a)(1)-(3) (requiring all parties to disclose the scope of the funder's rights to approve litigation decisions or settlement decisions; and a brief description of the funder's financial interest in the litigation); *see also* Standing Order, Contents of Joint Case Mgmt. Statement at ¶ 18 (N.D. Cal. Jan. 17, 2023) (requiring parties to disclose the existence of third-party litigation financing in any proposed class, collective, or representative action).  For the same reasons, Shopify respectfully requests that this Court compel Lower48 to disclose any third-party interests in this action, including the identity of any individuals or entities that have financial interests in the outcome of this litigation and the scope of those interests.

## II.     BACKGROUND

Publicly available documents indicate that Lower48 may be receiving funding from a third-party for some or all of Lower48's attorneys' fees and/or expenses to litigate this action.

The patent assignment document assigning the asserted patents to Lower48 lists Erin Madill as the submitter.  *See* Ex. 1 at 3.  There are three email addresses associated with Erin Madill: emadill@ip-edge.com, emadill@flatfeeip.com, and linhd@ip-edge.com.  *Id.*  IP Edge is an active litigation funder.  *See*, *e.g.*, Ex. 2 at 7-8, 10 (identifying a minimum of 524 cases funded by IP Edge in 2022).  Linhd@ip-edge.com is likely the email address for Linh Dietz, an individual

2

who is not an attorney but who acted on behalf of multiple third-parties in arranging for assignments of patents that Judge Connolly has expressed concern "could very well be a fiction, and that frauds may have been perpetrated on the PTO and this Court." *Nimitz Techs.*, 2022 WL 17338396, at *19; *see also id.* at *11, *14-*15 (Linh Dietz is not an attorney and was "a logical candidate for the linhd@ip-edge.com email address used by [two different plaintiffs] with the PTO").

Lower48's incorporation documents also show an overlap in personnel between Lower48 and USIF. *See* Ex. 3 (Lower48 IP, LLC Certificate of Formation listing registered agent and manager of Lower48 as Kent S. Petty); *see also* Ex. 4 at 4-5 (listing Kent S. Petty as first individual under About Us section of USIF website). USIF's mission statement states that USIF "provid[es] U.S. companies with access to . . . investment capital." Ex. 4 at 1. Moreover, Lower48's counsel Daignault Iyer claims to "have relationships with litigation funders as well, giving us the ability to craft the best funding approach for the particular client and patent portfolio at hand." Ex. 5 (Daignault Iyer's overview of practice areas). Studies have shown that litigation funders funded nearly 30% of all patent litigation cases nationwide in 2022. *See*, *e.g.*, Ex. 6 at 9.

In view of the facts set forth above, on May 5, 2023, Shopify sent Lower48 a letter requesting that Lower48 disclose relevant information to the Court regarding third-party interests in this action so the Court could determine conflicts of interest. Lower48 failed to respond. Shopify followed up on May 24, 2023, and the parties met and conferred on May 30, 2023. Lower48 indicated that it did not intend to provide the requested information.

### III.    LEGAL STANDARD

Under 28 U.S.C. § 455, federal judges must conduct an analysis of potential conflicts of interest and disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned" or where they have any "interest that could be substantially affected by

the outcome of the proceeding." 28 U.S.C. §§ 455(a)-(b). To aid in this determination, Federal Rule of Civil Procedure 7.1 requires nongovernmental corporate parties to file a disclosure statement with the court that "(1) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or (2) states that there is no such corporation." Fed. R. Civ. P. 7.1. The Advisory Committee Notes to the Rule explain its primary purpose:

> The information required [to be disclosed] by Rule 7.1(a) reflects the "financial interest" standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges. This information will support properly informed disqualification decisions in situations that call for automatic disqualification under Canon 3C(1)(c).

Fed. R. Civ. P. 7.1 Advisory Committee's Notes to 2002 Amendment. The Advisory Committee Notes further recognize that Rule 7.1 "does not cover all of the circumstances that may call for disqualification under the financial interest standard" and explain that "Rule 7.1 does not prohibit . . . requir[ing] disclosures in addition to those required by Rule 7.1." *Id.*

Indeed, the Supreme Court has made clear that to conduct the conflicts inquiry, courts must be "***informed of all the surrounding facts and circumstances***." *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 924 (2004) (emphases added); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1098 (2017) ("A judge abuses his discretion in denying recusal where a reasonable man, ***cognizant of the relevant circumstances*** surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality." (emphasis added) (internal cites omitted)). Courts further recognize that this inquiry is "extremely fact intensive and fact bound." *Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343, 346 (5th Cir. 2000); *see also Morrow v. McFarling*, 2017 WL 6452826, at *2 (E.D. Tex. Dec. 18, 2017). A court's analysis thus must "be guided . . . by an independent examination of the facts and circumstances of the particular claim." *Republic of Panama*, 217 F.3d at 346; *see also United States v. Bremers*, 195 F.3d 221, 226-27 (5th Cir. 1999).

4

IV.     ARGUMENT

The Court should order Lower48 to disclose information regarding third-party interests in this action—including the identity of any individuals or entities that have financial interests in the outcome of this litigation, whether as investors or litigation funders, and the scope of those interests—because (1) the Court has the authority to require disclosure of such information; and (2) such information is "critically important" to identifying any conflicts of interest and avoiding the appearance of impropriety. *Nimitz Techs.*, 2022 WL 17338396, at *2.

### A. This Court Has The Authority To Order Disclosure Of Information Concerning Third-Party Interests.

Federal courts are vested with the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Burden v. BTI Emp. Screening Servs., Inc.*, 248 F.3d 1138 (5th Cir. 2001) (cites omitted). The court's power to regulate the cases before it has long been recognized, dating back to the early days of the Constitution. *E.g.*, *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (collecting cases). The Supreme Court, furthermore, has "long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (citation omitted).

Thus, although Federal Rule of Civil Procedure 7.1 requires disclosure of certain information (*see supra* p. 4), the Advisory Committee Notes to the rule acknowledge that it "does not cover all of the circumstances that may call for disqualification under the financial interest standard" and explain that "Rule 7.1 does not prohibit . . . requir[ing] disclosures ***in addition to*** those required by Rule 7.1." *Id.* (emphasis added). Indeed, courts have routinely done so. For example, the Northern District of Texas requires disclosure of "a complete list of all persons,

5

associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case." N.D. Tex. L.R. 3.1(c);  N.D. Tex. L.R. 3.2(e); *see also*, *e.g.*, D. Md. L.R. 103.3(b) (similar); S.D. Ga. L.R. 7.1 (similar); N.D. Ga. L.R. 3.3 (similar); C.D. Cal. L.R. 7.1-1 (similar); N.D. Cal. L.R. 3-15 (similar); Standing Order, Contents of Joint Case Mgmt. Statement at ¶ 18 (N.D. Cal. Jan. 17, 2023) (similar); N.D. & S.D. Iowa Civ. R. 7.1 (similar); E.D. Mich. L.R. 83.4 (similar); D. Nev. L.R. 7.1-1 (similar); E.D.N.C. Civ. R. 7.3 (similar); N.D. Ohio L.R. 3.13(b) (requiring disclosure of any entity "that has a financial interest in the outcome of the case by reason of insurance, a franchise agreement or indemnity agreement."); S.D. Ohio Civ. R. 7.1.1 (requiring disclosure of entities "that have substantial financial interests in the outcome of the litigation by reason of insurance, a franchise agreement, or an indemnity agreement").  Similarly, the Fifth Circuit requires that parties file a "Certificate of Interested Persons" which "provides the court with additional information concerning parties whose participation in a case may raise a recusal issue."  5th Cir. R. 28.2.1.  The Certificate must identify "all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent corporations, or other legal entities who or which are financially interested in the outcome of the litigation."  *Id.*; *see also* 3d Cir. R. 26.1.1(b) (similar); 4th Cir. R. 26.1(a)(2)(B)-(C) (similar); 6th Cir. R. 26.1(b)(1)-(2) (similar); 10th Cir. R. 46.1(D)(1)-(2) (similar); 11th Cir. R. 26.1-1(a)(1) (similar).

Other courts have also expressly required disclosure of information regarding third-party litigation funders to aid in the conflicts analysis.  *See*, *e.g.*, *Nimitz Techs*., 2022 WL 17338396, at *2 (justifying additional disclosure requirements regarding third-party litigation funders due to the "critical[] importan[ce]" of ensuring that "federal judges do not suffer from conflicts that could call into question their impartiality"); Standing Order Regarding Third-Party Litig. Funding

6

Agreements (D. Del. Apr. 18, 2022) (Connolly, J.) (ordering statements regarding "Third-Party Funders" and additional related discovery within 30 days of the filing of an initial pleading); Standing Order, Contents of Joint Case Mgmt. Statement at ¶ 18 (N.D. Cal. Jan. 17, 2023) (requiring parties to disclose the existence of third-party litigation financing in any proposed class, collective, or representative action); D. N.J. L.R. 7.1.1(a)(1)-(3) (requiring all parties to disclose the scope of the funder's rights to approve of litigation decisions or settlement decisions; and a brief description of the funder's financial interest in the litigation); *see also* Fed. R. Civ. P. 83(b) (authorizing judges to "regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules").[2]

Similarly, this Court has the inherent authority to require disclosure of relevant information regarding third-party interests in this action.

### B.   Disclosure Of Third-Party Interests Is Necessary To Identify Conflicts of Interest and Avoid the Appearance of Impropriety.

Lower48's disclosure of information regarding any third-party interests in this action is essential to this Court's evaluation of any conflicts of interest under 28 U.S.C. § 455, which requires federal judges to analyze potential conflicts of interest and disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned" or where they have any "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(a)-(b); *see also Nimitz Techs.*, 2022 WL 17338396, at *2 (justifying additional disclosure requirements regarding Third-Party Funders due to "critical[] importan[ce]" of ensuring that "federal judges do not suffer from conflicts that could call into question their impartiality"). For

---

[2] In December 2022, the United States Government Accountability Office published a report on third-party litigation financing (TPLF) acknowledging that the "purpose of these rules is to allow judges to assess whether there are any conflicts that bear on the judges' recusal and disqualification. The rules do not specifically target TPLF, but may require disclosure of litigation funders' identities." Ex. 7 at 28.

7

example, Section 455(b)(4) provides that a judge must recuse himself where "[h]e knows that he, individually or as a fiduciary, or his spouse . . . has a financial interest . . . in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Disqualification is also required when the judge "or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person" either is "an officer, director, or trustee of a party," *id.* § 455(b)(5)(i), or is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(5)(iii). *See also SCA Servs., Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977) (recusal necessary where judge's brother was partner at a firm that stood to earn fees from the litigation).

The Supreme Court has made clear that the appearance of impropriety "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 947, 859-860 (1988). Thus, judges have an obligation to investigate and discover potentially disqualifying conflicts. *See* 35 U.S.C. § 455(c) (requiring judges to stay informed of their financial interests and make reasonable efforts with respect to the financial interests of their spouses). Section 455 thus "require[s] some reasonable investigation and action on a judge's own initiative." *See Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 130-131 (2d Cir. 2003) ("Section 455 is not a provision that requires judicial action only after a party to the litigation requests it"). It is, therefore, incumbent upon judges to investigate interests that could be disqualifying to avoid "the damage to public confidence in the federal judiciary's impartiality that would result from constant recusal motions or recurrent controversies over judges' financial interests in parties to litigation." *Id.*; *see also*, *e.g.*, *Nimitz Techs.*, 2022 WL 17338396, at *2 (analyzing the court's authority and "public responsibility" to require additional disclosures

8

regarding third-party interests, noting that "it is critically important that federal judges do not suffer from conflicts that could call into question their impartiality."); *Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) ("[I]t is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.").

An order requiring disclosure of third-party interests in this action would aid the Court in assessing whether there are any conflicts that may require recusal. The Supreme Court has made clear that in conducting the conflicts inquiry, the court must be "***informed of all the surrounding facts and circumstances***." *Cheney*, 541 U.S. at 924 (emphases added); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016), cert. denied, 137 S. Ct. 1098 (2017). Courts further recognize that this inquiry is "extremely fact intensive and fact bound." *Republic of Panama*, 217 F.3d at 346; *see also Morrow*, 2017 WL 6452826, at *2.

Here, public information indicates that there may in fact be third-party interests in this action and that additional information is necessary to evaluate potential conflicts. As discussed above (*supra* pp. 2-3), publicly available information indicates that Lower48 may be receiving funding to litigate this action from a third-party. The Court will be unable to determine whether a conflict exists under Section 455 without an independent examination of the facts, including any relevant information regarding third-party interests in this action. *See Republic of Panama*, 217 F.3d at 346; *see also Bremers*, 195 F.3d at 226–27. Anything short of a thorough examination of "all of the surrounding facts and circumstances" could prevent this Court from conducting a thorough assessments of conflicts. *Cheney*, 541 U.S. at 924.

It is particularly important that this investigation be conducted at an early stage to avoid a waste of both party and judicial resources, as Section 455 can "be applied retroactively," meaning

9

that if a conflict is later revealed, a judge would be "called upon to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." *Liljeberg*, 486 U.S. at 848.  Indeed, the Wall Street Journal published an investigative report in April 2022 detailing the financial conflicts of over 150 federal judges, emphasizing that these judges "violated U.S. law and judicial ethics."[3]  As a result of the report, 883 judges notified courts that they had improperly presided over cases that were eligible to be reopened.  The Federal Circuit also recently vacated a multi-billion-dollar judgment due to a violation of Section 455 when the presiding judge discovered, after the fact, that his wife held under $5,000 worth of stock in the defendant.  *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025, 1030 (Fed. Cir. 2022).  These examples underscore the importance of promptly identifying and diligently evaluating conflicts, to avoid wasted time and resources litigating cases that may later be vacated due to undiscovered conflicts.

Accordingly, the Court should require Lower48 to disclose any third-party interests in this action to determine whether there may be a judicial conflict that "could call into question [the Court's] impartiality." *Nimitz Techs.*, 2022 WL 17338396, at *2.

## V.     CONCLUSION

For the reasons above, Shopify respectfully requests that the Court grant this Motion and compel Lower48 to disclose information regarding third-party interests in this action, including the identity of any individuals or entities that have financial interests in the outcome of this litigation, whether as investors or litigation funders, and the scope of those interests.

---

[3] Ex. 8 ("A Wall Street Journal investigation found that 152 federal judges around the nation have violated U.S. law and judicial ethics by overseeing 1,076 court cases involving companies in which they or their family owned stock.").

10

Dated: June 7, 2023

Respectfully submitted,

/s/ Paige Arnette Amstutz
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT DOUGLAS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300
pamstutz@scottdoug.com

Gregory H. Lantier
Brittany B. Amadi
Gerard A. Salvatore
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
gregory.lantier@wilmerhale.com
brittany.amadi@wilmerhale.com
jerry.salvatore@wilmerhale.com

Liv Herriot
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
liv.herriot@wilmerhale.com

Hannah Santasawatkul
Texas State Bar No. 24107617
WILMER CUTLER PICKERING HALE AND
   DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
(720) 274-3135
hannah.santasawatkul@wilmerhale.com

*Attorneys for Defendant Shopify Inc.*

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 7, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ *Paige Arnette Amstutz*
Paige Arnette Amstutz