IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **LOWER48 IP LLC,**<br><br>        Plaintiff,<br><br>                v.<br><br>**SHOPIFY INC.,**<br><br>        Defendant. | Civil Action No. 6:22-cv-00997-DAE |

**DEFENDANT SHOPIFY INC.'S OBJECTIONS TO NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE (DKT. 30) PURSUANT TO RULE 72**

i

## TABLE OF CONTENTS

    Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTS | 2 |
| III. | STANDARD OF REVIEW | 5 |
| IV. | ARGUMENT | 5 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765 (5th Cir. 2015) ................................... 6

*Backertop Licensing LLC v. Canary Connect, Inc.*, No. CV 22 572-CFC, 2023 WL 4420467 (D. Del. July 10, 2023) ............................................................................. 1, 4

*Burns v. Nielsen*, 456 F. Supp. 3d 807 (W.D. Tex. 2020) ................................................................ 6

*Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913 (2004) ................................................................... 6

*Nimitz Techs. LLC v. CNET Media, Inc.*, No. CV 21-1247-CFC, 2022 WL 17338396 (D. Del. Nov. 30, 2022) .......................................................................... 1, 3, 4, 6

*Playboy Enterprises, Inc. v. U.S. Customs Serv.*, 959 F. Supp. 11 (D.D.C. 1997) .......................... 7

*Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343 (5th Cir. 2000) ................................ 7

*United States v. Bremers*, 195 F.3d 221 (5th Cir. 1999) ................................................................. 7

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1098 (2017) ................................................................................................................... 6

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 72 ........................................................................................................................ 2, 5

28 U.S.C. § 455 .................................................................................................................... 1, 2, 5, 6

## OTHER AUTHORITIES

Standing Order, Contents of Joint Case Mgmt. Statement (N.D. Cal. Jan. 17, 2023) ................................................................................................................................. 8

3d Cir. R. 26.1.1(b) .......................................................................................................................... 8

4th Cir. R. 26.1(a)(2)(B)-(C) ........................................................................................................... 8

5th Cir. R. 28.2.1 ............................................................................................................................. 7

6th Cir. R. 26.1(b)(1)-(2) ................................................................................................................. 8

10th Cir. R. 46.1(D)(1)-(2) .............................................................................................................. 8

11th Cir. R. 26.1-1(a)(1) .................................................................................................................. 8

C.D. Cal. L.R. 7.1-1 .................................................................................................................8

N.D. Cal. L.R. 3-15 .................................................................................................................8

N.D. Ga. L.R. 3.3 ....................................................................................................................8

S.D. Ga. L.R. 7.1 .....................................................................................................................8

N.D. & S.D. Iowa Civ. R. 7.1 .................................................................................................8

D. Md. L.R. 103.3(b)...............................................................................................................8

E.D. Mich. L.R. 83.4 ...............................................................................................................8

D. Nev. L.R. 7.1-1 ..................................................................................................................8

E.D.N.C. Civ. R. 7.3 ...............................................................................................................8

N.D. Ohio L.R. 3.13(b) ...........................................................................................................8

S.D. Ohio Civ. R. 7.1.1 ...........................................................................................................8

N.D. Tex. L.R. 3.1(c) ..............................................................................................................7

N.D. Tex. L.R. 3.2(e) ..............................................................................................................7

I.      **INTRODUCTION**

The real plaintiffs in this lawsuit are not who they appear to be. Publicly available information indicates that the sole named plaintiff, Lower48 IP LLC ("Lower48"), likely holds only about a 5% interest in this case. The other 95% of the interest on plaintiff's side is likely held by investment vehicles, litigation prospectors, or other entities presently unknown to the Court or the public.

The case appears to have been structured in this way by IP Edge—an entity responsible for filing over 4,000 patent infringement lawsuits in the last 8 years—specifically for the purpose of rendering Plaintiff's Federal Rule of Civil Procedure 7.1 disclosure entirely meaningless. *See*, *e.g.*, *Nimitz Techs. LLC v. CNET Media, Inc.*, No. CV 21-1247-CFC, 2022 WL 17338396, at *6 (D. Del. Nov. 30, 2022) ("IP Edge engages in a practice of naming individuals with no prior connection to patent monetization as managers or members of its various LLCs to avoid disclosure of its real interests in defiance of the purpose of the Disclosure and Third-Party Funding Orders."); *Backertop Licensing LLC v. Canary Connect, Inc.*, No. CV 22-572-CFC, 2023 WL 4420467, at *6 (D. Del. July 10, 2023) ("I do, however, have serious concerns. . . that real parties in interest, such as IP Edge and Mavexar, may have been hidden from the Court and the defendants."). As a result, the Court and the public lack the most basic information needed to evaluate whether any potential conflicts of interest may exist. *Id.*; 28 U.S.C. § 455.

At the July 7, 2023 hearing in which he denied Defendant Shopify Inc. ("Shopify")'s motion to compel an identification of the actual interested parties in this case, Magistrate Judge Gilliland found that knowing the identities of litigation funding **middlemen** IP Edge and U.S. Innovation Fund ("USIF") was sufficient to remedy the intentionally pointless Rule 7.1 disclosure Lower48 filed. Ex. 1, July 7, 2023 Mot. Hr'g Tr. ("Hr'g Tr.") at 16:13-16. That was clear error and contrary to the law. All of the available evidence indicates that IP Edge and USIF are not the

1

only parties with a financial and controlling interest in this litigation. The Court (and the public) should know who else stands to benefit from the filing of this case.

Section 455 imposes a duty on federal judges to perform a meaningful evaluation of whether there are any potential conflicts of interest in each case before them. In order to do so, the Court needs, at a minimum, an identification of each person or entity that is specifically invested in the case and stands to benefit financially from it. Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and this Court's Local Rule for the Assignment of Duties to United States Magistrate Judges 4(a), Shopify respectfully requests that the Court set aside Magistrate Judge Gilliland's July 7, 2023 oral ruling (Dkt. 30) memorialized on July 14, 2023 in a written order (Dkt. 31) denying Shopify's Motion to Compel Disclosure of Third-Party Interests in this Litigation ("Mot.," Dkt. 24) and order Plaintiff to disclose information regarding third-party interests in this action, including the identity of any individuals or entities that have financial interests in the outcome of this litigation, whether as investors or litigation funders, and the scope of those interests.

## II.    RELEVANT FACTS

The named plaintiff in this lawsuit, Lower48 IP LLC, had no apparent involvement in the development of the asserted patents and has never previously been involved in any type of patent litigation. It was formed only seven months prior to filing the complaint in this case and most likely has no assets other than the asserted patents and no actual business operations. Lower48 does not deny that there are shadow entities controlling this case. Ex. 1, Hr'g Tr. at 5:13-6:1, 7:3-7, 15:12-14.

Studies have shown that litigation funders funded nearly 30% of all patent litigation cases nationwide in 2022. *See, e.g.*, Mot., Ex. 6 at 9. IP Edge is an entity founded in 2015 that has orchestrated the filing of over 4,000 patent infringement lawsuits since that time. *See, e.g.*,

https://ipde.com/blog/2023/06/09/drama-court-rejects-mavexar-attorneys-efforts-to-withdrawgrills-them-on-efforts-to-hide-mavexar-from-court/.   IP Edge's now well-documented approach is to set up litigation funding structures in which the named plaintiff has almost no actual interest in the case and no real decision-making authority.  *See*, *e.g.*, Ex. 2, *Nimitz Techs. LLC v. CNET Media, Inc.*, No. CV 21-1247-CFC, Evidentiary Hr'g Tr. ("*Nimitz* Tr."), Dkt. 26 (D. Del. Nov. 7, 2022) at 47:12-13; 86:12-17.  For example, as Chief Judge Connolly found in *Nimitz*, each named plaintiff in a number of IP Edge-orchestrated cases had no involvement in the "litigation decisions in the cases that are filed that assert the patent."  *Nimitz Techs.*, 2022 WL 17338396, at *18. Instead, "all the litigation decisions" were made by another entity, named Mavexar, all coordinated through IP Edge. Ex. 2, *Nimitz* Tr. at 74:22-75:2, 77:7-11 ("Q. And although you are in name the owner of the patent, you defer solely to Mavexar and the lawyers to make all the decisions associated with how the patent is asserted and how cases are settled, fair? A. Correct."), 99:21-25 ("Q. Is it fair to say that your involvement in all the litigation was performed through Mavexar? . . . A. Yes."). Plaintiffs in cases orchestrated through IP Edge have disclosed that the litigation funders are entitled to "90-95% of any litigation and settlement proceeds."[1] IP Edge's practice is to put a named plaintiff—the only name disclosed to the Court to evaluate conflicts— who "has no assets" in front of the courts. *See*, *e.g.*, Ex. 3, *Backertop Licensing LLC v. August Home, Inc.*, No. CV 22-573-CFC, Evidentiary Hearing Tr., Dkt. 27 at 41:6-10 (D. Del. Nov. 10, 2022) (testimony that funding agreement entitled IP Edge entity to 95% of recovery and limited named plaintiff Backertop to only 5%); Ex. 2, *Nimitz* Tr. at 75:9-13 (testimony that funding agreement entitled IP Edge entity to 90% of recovery and limited named plaintiff Nimitz

---

[1] Jacob Gershman, *Delaware Judge Targets Secret Funding of Lawsuits*, The Wall Street J. (May 22, 2023); *see also* Heather M. Schneider, *Patent Ownership and Litigation Financing: A New Era Begins in Delaware?*, Wilkie Farr & Gallagher LLP (Dec. 22, 2022).

Technologies to only 10%); *id.* at 91:7-14 (testimony that funding agreement entitled IP Edge entity to 95% of recovery and limited named plaintiff Mellaconic IP to only 5%).

As Shopify explained in its motion (Mot. at 2-3), publicly available documents indicate that this case is being orchestrated by IP Edge. The patent assignment document assigning the asserted patents to Lower48 lists Erin Madill as the submitter. *See* Mot., Ex. 1 at 3. On those patent assignment documents, there are three email addresses associated with Erin Madill, two of which unequivocally tie her to IP Edge: emadill@ip-edge.com and linhd@ip-edge.com. *Id*. The last one, linhd@ip-edge.com is likely the email address for Linh Dietz, an individual who is not an attorney, but who acted on behalf of multiple third parties in arranging for assignments of patents. *Nimitz Techs*., 2022 WL 17338396, at *11, *14-*15 (Linh Dietz is not an attorney and was "a logical candidate for the linhd@ip-edge.com email address used by [two different plaintiffs] with the PTO"). Judge Connolly has expressed concern that such assignments "could very well be a fiction, and that frauds may have been perpetrated on the PTO and this Court." *Id.* at *19; *Backertop Licensing LLC v. Canary Connect, Inc*., 2023 WL 4420467, at *6 (expressing concern that "those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents asserted in this Court to a shell LLC and filing fictious patent assignments with the PTO.").

Lower48's incorporation documents also show an overlap in personnel between Lower48 and USIF. *See* Mot., Ex. 3 (Lower48 IP LLC Certificate of Formation listing registered agent and manager of Lower48 as Kent S. Petty); *see also* Mot., Ex. 4 at 4-5 (listing Kent S. Petty as first individual under About Us section of USIF website). USIF's mission statement states that USIF "provid[es] U.S. companies with access to . . . investment capital." Mot., Ex. 4 at 1. Moreover, Lower48's counsel Daignault Iyer claims to "have relationships with litigation funders as well,

4

giving [it] the ability to craft the best funding approach for the particular client and patent portfolio at hand." Mot., Ex. 5 (Daignault Iyer's overview of practice areas).

### III. STANDARD OF REVIEW

The Court must "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

### IV. ARGUMENT

At the July 7, 2023 hearing, Magistrate Judge Gilliland found that Lower48 was not required to disclose information regarding third-party interests in this action—including the identity of any individuals or entities that have financial interests in the outcome of this litigation and the scope of those interests—because he incorrectly found that he had all the information he needed to evaluate conflicts and ignored the publicly available facts about how IP Edge structures its litigation financing. Ex. 1, Hr'g Tr. at 16:13-19 ("I think we've identified in the motion the two entities that defendants are most concerned about. So the Court has those entities' information for purposes of conflicts. I also note that under Rule 455, we've gotta be concerned about things where the Court's impartiality might reasonably be questioned. I think the Court has sufficient information for that, as well.").

The July 14, 2023 Order (Dkt. 31) is clearly erroneous and contrary to the law because it is undisputed that there are entities other than IP Edge and USIF that have direct financial interests in and control over this case. Ex. 1, Hr'g Tr. at 5:13-6:1, 7:3-7, 15:12-16 (Lower48's counsel stating "we don't deny that a shadow entity controls, but we also don't confirm it because it's not defendant's business what plaintiff's potential financing are"); *see also* 13:12-21 (Lower48's counsel stating "I didn't know your Honor was part of a shadow entity. That's what we're at least pretending to argue about here is the Court's, you know, conflicts that the Court may or may not have"). Thus, contrary to the July 14, 2023 Order, simply knowing that IP Edge and USIF *may*

5

be involved is insufficient for the Court to perform its obligations under 28 U.S.C. § 455. Ex. 1, Hr'g Tr. at 16:13-16 ("I think we've identified in the motion the two entities that defendants are most concerned about. So the Court has those entities' information for purposes of conflicts.").

Under 28 U.S.C. § 455, federal judges must conduct an analysis of potential conflicts of interest and disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned" or where they have any "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §§ 455(a)-(b); *see also* Ex. 1, Hr'g Tr. at 6:6-21. The Supreme Court has made clear that to conduct the conflicts inquiry, courts **must** be "informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 924 (2004); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016) ("A judge abuses his discretion in denying recusal where a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality." (internal cites omitted)), *cert. denied*, 137 S. Ct. 1098 (2017).

The Court cannot meaningfully make that determination without an identification of the actual real parties in interest and a description of what their interests are. *Id.* at 5:13-6:1. The July 14, 2023 Order's refusal to order identification of the entities who likely have the majority interest in the litigation was therefore "clearly erroneous." *Burns v. Nielsen*, 456 F. Supp. 3d 807, 818 (W.D. Tex. 2020) ("A finding 'is clearly erroneous if the court' is left with the definite and firm conviction that a mistake has been committed.") (citing *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 768 (5th Cir. 2015)); *see also* 28 U.S.C. § 455 (requiring federal judges to disqualify themselves "in any proceeding in which [their] impartiality might reasonably be questioned" or where they have any "interest that could be substantially affected by the outcome of the proceeding"); *Nimitz Techs.*, 2022 WL 17338396, at *1 (acknowledging disclosure concerns

regarding "whether the real parties in interest are before the Court"), *3 (explaining that requiring disclosure of this information "promotes the identification of the real parties in interest in a case" and that "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.").

To the extent Judge Gilliland's denial was based on the lack of existing case law in the Western District of Texas regarding production of this type of information (Ex. 1, Hr'g Tr. at 16:20-25), that does not justify the decision. *Playboy Enterprises, Inc. v. U.S. Customs Serv.*, 959 F. Supp. 11, 17 (D.D.C. 1997) (the fact that there is no contradictory case law does not necessitate that the finding is reasonable). The Court's analysis, instead, must "be guided . . . by an independent examination of the facts and circumstances of the particular claim." *Republic of Panama v. Am. Tobacco Co., Inc.*, 217 F.3d 343, 346 (5th Cir. 2000); *see also United States v. Bremers*, 195 F.3d 221, 226-27 (5th Cir. 1999).

Indeed, while the Western District of Texas appears to have never (prior to this case) ruled on whether to order disclosure of financially interested and controlling parties over and above those specifically required by Rule 7.1, numerous other federal courts already require the disclosure of such information. This includes the Fifth Circuit and the Northern District of Texas. Mot. at 5-7; Ex. 1, Hr'g Tr. at 7:8-17; 5th Cir. R. 28.2.1 (requiring filing of "Certificate of Interested Persons" which "provides the court with additional information concerning parties whose participation in a case may raise a recusal issue."); N.D. Tex. L.R. 3.1(c) (requiring disclosure of "a complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case"); N.D. Tex. L.R. 3.2(e). According to the Wall Street Journal, approximately one-quarter of federal judicial districts

already require such disclosures and disclosure is particularly warranted here given the publicly available facts about how IP Edge structures its litigation financing. Gershman, *supra* note 1. *See, e.g.*, 3d Cir. R. 26.1.1(b) (requiring disclosure of "every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest"); 4th Cir. R. 26.1(a)(2)(B)-(C) (similar); 6th Cir. R. 26.1(b)(1)-(2) (similar); 10th Cir. R. 46.1(D)(1)-(2) (similar); 11th Cir. R. 26.1-1(a)(1) (similar); D. Md. L.R. 103.3(b) (similar); S.D. Ga. L.R. 7.1 (similar); N.D. Ga. L.R. 3.3 (similar); C.D. Cal. L.R. 7.1-1 (similar); N.D. Cal. L.R. 3-15 (similar); Standing Order, Contents of Joint Case Mgmt. Statement at ¶ 18 (N.D. Cal. Jan. 17, 2023) (similar); N.D. & S.D. Iowa Civ. R. 7.1 (similar); E.D. Mich. L.R. 83.4 (similar); D. Nev. L.R. 7.1-1 (similar); E.D.N.C. Civ. R. 7.3 (similar); N.D. Ohio L.R. 3.13(b) (requiring disclosure of any entity "that has a financial interest in the outcome of the case by reason of insurance, a franchise agreement or indemnity agreement"); S.D. Ohio Civ. R. 7.1.1 (requiring disclosure of entities "that have substantial financial interests in the outcome of the litigation by reason of insurance, a franchise agreement, or an indemnity agreement").

Disclosure is particularly appropriate in cases such as this one where there is no dispute that there are other entities that have a financial interest in the outcome of this litigation. The publicly available information about how IP Edge strategically and habitually structures its litigation financing to avoid its disclosure obligations under Rule 7.1 and publicly available documents confirm that this case is likely being orchestrated by IP Edge. The July 14, 2023 Order ignored these publicly available facts and denied Shopify's limited request that Lower48 identify the names of any third parties with an interest in this case and the scope of those interests, which would allow the Court to conduct the required conflicts analysis. The Order is therefore "clearly erroneous" and must be vacated.

## V.     CONCLUSION

For the reasons above, Shopify respectfully requests that the Court grant Shopify's Motion and compel Lower48 to disclose information regarding third-party interests in this action, including the identity of any individuals or entities that have financial interests in the outcome of this litigation, whether as investors or litigation funders, and the scope of those interests.

Dated:  July 21, 2023

Respectfully submitted,

*/s/ Gregory H. Lantier*

Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel:  (512) 495-6300
pamstutz@scottdoug.com

Gregory H. Lantier
Brittany B. Amadi
Gerard A. Salvatore
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
gregory.lantier@wilmerhale.com
brittany.amadi@wilmerhale.com
jerry.salvatore@wilmerhale.com

Liv Herriot
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
liv.herriot@wilmerhale.com

Hannah Santasawatkul
Texas State Bar No. 24107617

                                                              WILMER CUTLER PICKERING HALE AND
                                                                 DORR LLP
                                                            1225 17th Street, Suite 2600
                                                            Denver, Colorado 80202
                                                            (720) 274-3135
                                                            hannah.santasawatkul@wilmerhale.com

                                                            *Attorneys for Defendant Shopify Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 21, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

                                              */s/ Paige Arnette Amstutz*
                                              Paige Arnette Amstutz