IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **LOWER48 IP LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SHOPIFY INC.,**<br><br>Defendant. | Civil Action No. 6:22-cv-00997-DAE<br><br>**HIGHLY CONFIDENTIAL –**<br>**ATTORNEYS' EYES ONLY**<br><br>**FILED UNDER SEAL** |

**SHOPIFY INC.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S VERBAL
COMMUNICATIONS WITH THIRD-PARTY IP EDGE LLC**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1
II. BACKGROUND ....................................................................................................... 2
III. LEGAL STANDARD ................................................................................................ 4
IV. ARGUMENT ............................................................................................................. 4
V. CONCLUSION .......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Mem'l Hermann*,
　973 F.3d 343 (5th Cir. 2020) ...............................................................................................7

*Aiken v. Texas Farm Bureau Mut. Ins. Co.*,
　151 F.R.D. 621 (E.D. Tex. 1993) .........................................................................................5

*Barry v. Medtronic, Inc.*,
　2016 WL 7665426 (E.D. Tex. Oct. 31, 2016) ......................................................................4

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*,
　614 F. App'x 690 (5th Cir. 2015) .........................................................................................6

*Bross v. Chevron U.S.A. Inc.*,
　2009 WL 854446 (W.D. La. Mar. 25, 2009) ....................................................................2, 7

*Ferko v. National Ass'n For Stock Car Auto Racing, Inc.*,
　219 F.R.D. 396 (E.D. Tex. 2003) ......................................................................................5, 6

*Hickman v. Taylor*,
　329 U.S. 495 (1947) ...........................................................................................................2, 7

*Kansas City Power & Light Co. v. United States*,
　139 Fed. Cl. 546 (2018) .......................................................................................................5

*Nimitz Techs. LLC v. CNET Media, Inc.*,
　2023 WL 8187441 (D. Del. Nov. 27, 2023) ........................................................................2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　2018 WL 1162552 (E.D.N.Y. Feb. 26, 2018) ......................................................................7

*Stanley v. Trinchard*,
　2005 WL 230938 (E.D. La. Jan. 27, 2005) .........................................................................6

*Taylor Lohmeyer Law Firm P.L.L.C. v. United States*,
　957 F.3d 505 (5th Cir. 2020) ...............................................................................................4

*Turner v. Grumpy, LLC*,
　2009 WL 259927 (N.D. Miss. Feb. 2, 2009) .......................................................................7

*Ultra Premium Servs., LLC v. OFS Int'l, LLC*,
　2020 WL 13413208 (S.D. Tex. Apr. 28, 2020) ...................................................................6

*United States v. Campos*,
  20 F.3d 1171 (5th Cir. 1994) ...............................................................................................4

*United States v. Fluitt*,
  99 F.4th 753 (5th Cir. 2024) ............................................................................................ 5-6

*United States v. Neal*,
  27 F.3d 1035 (5th Cir. 1994) ...............................................................................................5

I.  **INTRODUCTION**

Seeking to shield itself from liability under 35 U.S.C. § 285 and similar provisions designed to prevent litigation abuse, third-party IP Edge LLC ("IP Edge") orchestrated the creation of an entity, which it named Lower48 IP LLC ("Lower48"), for the purpose of holding the asserted patents and filing this lawsuit. ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ IP Edge's choice to create this structure has consequences, however, and one of them is that Lower48 cannot properly claim that attorney-client privilege or the attorney work product doctrine applies to bar discovery of spoken communications with IP Edge. Nonetheless, at deposition, Lower48 improperly instructed its witness not to testify about conversations with IP Edge on the basis of attorney-client privilege.

The attorney-client privilege clearly does not apply. ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓ Ex. A, -862; Ex. B, -711.[1] Nor can Lower48 credibly claim that the common interest privilege protects these communications because IP Edge is not party to any lawsuit or potential lawsuit and, regardless, the parties only share a joint financial interest, not a legal one.

Lower48 did not raise any objection based on attorney work product during the deposition, and for good reason. Federal Rule of Civil Procedure 26(b)(3)(a) applies only to "documents and tangible things," and does not bar discovery into conversations, which is exactly the discovery that counsel for Lower48 improperly blocked. And while courts have found that the verbal litigation

---

[1] All exhibits are attached to the Declaration of Liv Herriot. All emphasis added unless otherwise noted.

1

advice given by attorneys to their clients and trial witnesses can be protected under *Hickman v. Taylor*, 329 U.S. 495 (1947), they have expressly recognized that *Hickman* does not apply to bar discovery of discussions with non-attorney, non-client, and non-trial witness parties like IP Edge. *See, e.g.*, *Bross v. Chevron U.S.A. Inc.*, 2009 WL 854446, at *6 (W.D. La. Mar. 25, 2009) (declining to "extend the work-product doctrine to intangible information held by non-attorneys").

The parties are at an impasse as to this discovery. Shopify, thus, moves to compel Lower48 to answer questions regarding Lower48 and its counsel's communications with IP Edge.

## II.  BACKGROUND

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ *See id.* at 29:21-23. But though it is behind the filing of nearly five thousand patent infringement lawsuits, ███████████████████████████████████████ *See id*. at 86:25-87:3, 90:5-91:15; Ex. D. Instead, IP Edge sets up shell companies and recruits sometimes unwitting individuals to serve as their managers and take on the risk of liability, while IP Edge is contractually entitled to nearly all the benefit of any payment. *See Nimitz Techs. LLC v. CNET Media, Inc.*, 2023 WL 8187441, at *35 (D. Del. Nov. 27, 2023) ("Rather than having the asserted patents assigned to itself or to its own LLCs, IP Edge arranged for the patents to be assigned to LLCs it formed under the names of relatively unsophisticated individuals. … The LLCs were empty vessels with no assets until IP Edge arranged for the assignment of the patents to those LLCs.").

The titular plaintiff in this lawsuit, Lower48, is a creation of IP Edge ████████

███████████████████████████████████████████████████████████████



Shopify deposed Mr. Petty on January 23 as Lower48's 30(b)(6) witness.

During Mr. Petty's deposition, Shopify inquired into Lower48 and its counsel's conversations with IP Edge. Ex. E, 80:24-84:17, 211:5-212:4. However, based on counsel's instructions, Mr. Petty refused to answer questions regarding the substance of those communications. *See id.* at 82:21-83:8, 84:17-24, 211:24-212:4. On February 6, Shopify asked Lower48 to provide the basis for its privilege assertion over communications involving IP Edge.

3

Ex. G, 1-3.  Having received no response, Shopify followed up on February 12.  Ex. H.  On February 13, Lower48 vaguely asserted that "an attorney-client relationship existed" between Lower48 and IP Edge, but failed to provide a concrete basis for its privilege claims over the specific information sought.  Ex. I, 1-2.  The parties conferred on February 19, but were unable to reach agreement.

### III.  LEGAL STANDARD

Because claims of attorney-client privilege "[have] the effect of withholding relevant information from the fact-finder," they are "interpreted narrowly so as to apply only where necessary to achieve [their] purpose."  *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020).  "[T]he party asserting the privilege bears the burden of proof," and "ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent."  *Id.* (quotations omitted).

The work product doctrine provides "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation."  *United States v. Campos*, 20 F.3d 1171, at *18 (5th Cir. 1994) (quotations omitted).  As with attorney-client privilege, "the burden of demonstrating applicability of work product protection rests on the party invoking it."  *Barry v. Medtronic, Inc.*, 2016 WL 7665426, at *3 (E.D. Tex. Oct. 31, 2016).

### IV.  ARGUMENT

Lower48 should be compelled to provide discovery into verbal communications to and from IP Edge.  Neither attorney-client privilege nor the common interest doctrine or attorney work product protect those communications.

*First*, Lower48 cannot properly assert attorney-client privilege over those conversations.  Attorney-client privilege narrowly applies to "communications from the client to the attorney made in confidence for the purpose of obtaining legal advice."  *United States v. Neal*, 27 F.3d

4

1035, 1048 (5th Cir. 1994) (quotations omitted). ▮

▮ *See supra* pp. 3; Ex. C, 74:8-25; *see also Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003) ("Generally, when an attorney divulges privileged information to a third party, attorney-client … cease[s] to exist.")

**Second**, these conversations are likewise not covered by the common interest doctrine. "[T]he common interest doctrine is an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." *Ferko*, 219 F.R.D at 401 (quotations omitted). It is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other without making shared information discoverable." *Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 563 (2018) (quotations omitted); *see also Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 624 (E.D. Tex. 1993) (the privilege only protects communications "to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings") (quotations omitted). Here, IP Edge is not a party to any lawsuit or potential lawsuit. The common interest privilege does not apply.[2]

Moreover, even in situations where two parties are both involved in current or potential litigation, the common interest privilege solely applies where those parties share a "common ***legal***

---

[2] Notably, even if IP Edge were a ***co-plaintiff***, there would be no recognized right to claim common interest privilege. The Fifth Circuit has not established a common interest privilege for co-plaintiffs—much less to a plaintiff and third-party that has refused to join the lawsuit as a co-plaintiff like IP Edge has here. *See United States v. Fluitt*, 99 F.4th 753, 764 (5th Cir. 2024) ("common interest privilege … require[s] a showing that … the communications were between co-defendants and their counsel"); *Stanley v. Trinchard*, 2005 WL 230938, at *1 (E.D. La. Jan. 27, 2005) ("[I]t is questionable in the Fifth Circuit whether the common interest doctrine extends to plaintiffs."); *see also* Ex. I, 2 (refusing to add IP Edge as a co-plaintiff to this litigation).

5

interest." *Ferko*, 219 F.R.D. at 401.  Lower48 and IP Edge have no such common legal interest. Rather, Lower48 and IP Edge have, at best, a common *financial* interest in the proceeds from the litigation (though, in truth, Lower48 has almost no actual financial interest in the proceeds because essentially all the money goes to IP Edge, the litigation funder(s), the attorneys, and the Jenkins Family Trust).  A common financial interest is "insufficient to give rise to [common interest] privilege."  *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 704, n.20 (5th Cir. 2015); *see also Ultra Premium Servs., LLC v. OFS Int'l, LLC*, 2020 WL 13413208, at *2 (S.D. Tex. Apr. 28, 2020) (explaining that "*a joint financial interest will not suffice*" to establish "common legal interest privilege").

*Third*, attorney work product protection does not cover these communications for two reasons: it is waived and does not apply. ███████████████████████████████████████
████████████████████████████████████████ Ex. E, 82:9-84:24.  It first raised that argument weeks later in a passing reference to "another of Rule [26's] protections," without any elaboration.  Ex. I, 1.  That objection is waived.

But regardless of whether Lower48 waived the objection by failing to raise it timely, Lower48 cannot meet its burden to show that verbal communications to and from IP Edge are shielded from discovery on the basis of attorney work product.  Attorney work product is primarily protected from discovery under Rule 26(b)(3), which provides that "[o]rdinarily, a party may not discover ***documents and tangible things*** that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  Rule 26(b)(3) does not apply to the discovery sought in this motion, which is directed to verbal communications.  *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (work product doctrine is only "partially codified" in Rule 26(b)(3)).

6

And the limited attorney work product protection for verbal communications does not apply here either because it applies only to ***attorneys***' communications with their ***clients***—i.e., communications between Lower48 and its counsel; not communications between Lower48 and IP Edge or between Lower48's counsel and IP Edge. Applying federal common law, federal courts have recognized that there is a limited attorney work product protection for verbal communications that applies under *Hickman v. Taylor*, 329 U.S. 495 (1947). The doctrine articulated in *Hickman* "insulates a lawyer's research, analysis of legal theories, mental impressions, notes and memoranda of witnesses' statements from opposing counsel's inquiries." *Turner v. Grumpy, LLC*, 2009 WL 259927, at *1 (N.D. Miss. Feb. 2, 2009). A ***lawyer's*** work product may therefore be both tangible and intangible, such as an attorney's recollection of what a witness said. *See Hickman*, 329 U.S. at 510. However, the protections that have been extended to ***attorneys'*** intangible work product do not apply to the communications of non-counsel. *See, e.g.*, *Bross*, 2009 WL 854446, at *6 (because the deponent was not an attorney, counsel "may question [him] about…any statements made by witnesses and other team members" without violating privilege); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2018 WL 1162552, at *12 (E.D.N.Y. Feb. 26, 2018) ("The protection afforded under *Hickman*, while including intangible matters such as mental impressions, is limited to mental impressions of an attorney. … Here, [the witness] is not an attorney, his impressions are not protected by *Hickman*, and his oral responses to the questions at deposition are not protected by the work product doctrine."). ███████ ██████████████████████████████████████ Ex. C, 74:4-19. Accordingly, as non-counsel, verbal communications to and from IP Edge are not shielded from discovery by the attorney work product doctrine.

7

## V. CONCLUSION

For these reasons, Shopify respectfully requests that the Court grant this motion and compel Lower48 to provide full discovery into verbal communications to and from IP Edge.

Dated: February 27, 2025

Respectfully submitted,

*/s/ Paige A. Amstutz*
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT DOUGLAS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel: (512) 495-6300
pamstutz@scottdoug.com

Gregory H. Lantier
Brittany B. Amadi
Gerard A. Salvatore
Gilbert T. Smolenski
L. Alyssa Chen
WILMER CUTLER PICKERING HALE AND
  DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
gregory.lantier@wilmerhale.com
brittany.amadi@wilmerhale.com
jerry.salvatore@wilmerhale.com
gilbert.smolenski@wilmerhale.com
l.alyssa.chen@wilmerhale.com

Liv Herriot
WILMER CUTLER PICKERING HALE AND
  DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000
liv.herriot@wilmerhale.com

Hannah Santasawatkul
Texas State Bar No. 24107617
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1225 17th Street, Suite 2600

Denver, Colorado 80202
(720) 274-3135
hannah.santasawatkul@wilmerhale.com

*Attorneys for Defendant Shopify Inc.*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Defendant's counsel conferred with Plaintiff's counsel prior to filing the foregoing Motion and confirmed that Plaintiff opposes the requested relief.

>                               */s/ Paige A. Amstutz*
>                               Paige Arnette Amstutz

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via email on February 27, 2025.

>                               */s/ Paige A. Amstutz*
>                               Paige Arnette Amstutz